THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THE SAINT NICHOLAS BANK of New York, HUGH J. GRANT, as Temporary Receiver, Petitioner, Appellant.

*Temporary receiver of corporation — to act under the instructions of the court — right of set-off between a bank and its depositor.*

The temporary receiver of a bank has no power, without the instructions and order of the court, to surrender collaterals pledged as security for a loan, and to permit the offset of an amount on deposit therein. (VAN BRUNT, P. J., dissenting.)

A temporary receiver is an officer and representative of the court, and is at all times entitled to and must receive the advice and protection of the court. His powers are limited by the provisions of the Code of Civil Procedure (§§ 1788, 1789), which expressly confer upon the court the duty of enlarging them from time to time, as the exigencies of the situation may require.

The right of set-off exists between a bank and its depositor upon cross demands, when both are due.

It is only in the case of proved or admitted insolvency that a person, liable upon a call loan, can set off his deposit against the same, where he has not demanded payment thereof.

APPEAL by Hugh J. Grant, as temporary receiver of The Saint Nicholas Bank of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of January, 1894, denying the defendant's motion for instructions.

*John M. Bowers,* for Hugh J. Grant, as temporary receiver, appellant.

*Theodore E. Hancock, Attorney-General,* for the People, respondent.

O'BRIEN, J. :

On the 26th of December, 1893, the applicant was appointed temporary receiver of the St. Nicholas Bank in an action brought upon the relation of the Attorney-General, pursuant to sections 1785 and 1786 of the Code of Civil Procedure, to dissolve the corporation because of its insolvency. At this date one Charles Kurzman had to his credit in the bank $1,145.14, and he was indebted to it upon three demand loans amounting to $3,000, which were secured by a pledge of collaterals. Kurzman notified the receiver that he was prepared to pay off the demand loans upon the receiver applying such balance as an offset. Thereupon the receiver, being in doubt as to the propriety of granting such request, applied to this court for instructions as to whether he should make such application and surrender the securities.

The court, while stating that a depositor who was indebted to the bank had a right to have the amount of his deposit offset against his debt, denied the application of the receiver and refused to instruct him in the premises, for the reason, as stated in the opinion, that " there is no necessity for the Receiver to make a special application to the court in such cases."

In this, we think, the learned judge overlooked the express provisions of the Code. As some question has arisen, and the practice has not been definitely announced, we think it proper to refer at length to the sections of the Code which we regard as controlling.

Preliminary thereto, it is to be remembered that the distinction between temporary and permanent receivers is a very old one, and the reason for it becomes apparent when we consider the duties which each has to perform, and the powers essential and necessarily given to each to enable him to perform such duties. We do not deem it necessary to examine at length the powers and duties of a temporary and permanent receiver respectively, prior to the Code, for the reason that the subject is fully discussed in the case of *Herring* v. *N. Y., L. E. & W. R. R. Co.* (105 N. Y. 340), and because

the Code itself is explicit as to what are the duties and powers of such officers.

Thus, by section 1788 it is provided that in the action brought by the Attorney-General the court, as was done in this case, may appoint a receiver, who, by the express language of the section, " is a temporary receiver until final judgment is entered. A temporary receiver has power to collect and receive the debts, demands and other property of the corporation, to preserve the property and the proceeds of the debts and demands collected, to sell or otherwise dispose of the property, as directed by the court. * * * Unless additional powers are specially conferred upon him, as prescribed in the next section, a temporary receiver has only the powers specified in this section and those which are incidental to the exercise thereof."

Section 1789 provides as follows : " A temporary receiver * * * is in all respects subject to the control of the court. In addition to the powers conferred upon him [as temporary receiver], * * * the court may, by the order or interlocutory judgment appointing him, or by an order subsequently made in the action, or by the final judgment, confer upon him the powers and authority and subject him to the duties and liabilities of a permanent receiver, or so much thereof as it thinks proper, except that he shall not make any distribution among the creditors or stockholders before final judgment, unless he is specially directed so to do by the court."

From a reading of these sections, we think it clear that the receiver, without the instructions and order of the court, would have no power to surrender the collaterals which were pledged as security for the loan, and permit the offset of the amount on deposit. Hence the necessity in a proper case of applying to the court. As correctly argued by counsel for the receiver, the latter is an officer and representative of the court. He is at all times entitled to and must receive the advice and protection of the court. The provisions of the Code referred to, moreover, limit his powers and expressly confer upon the court the duty of enlarging them from time to time, as the exigencies of the situation may require. As said, therefore, by DANFORTH, J., in *The People ex rel. Atty.-Gen.* v. *Security Life Ins. & Annuity Co.* (79 N. Y. 270) : " Since the receiver is an officer, or, as he is sometimes called, ' the hand,' of the court, it would

be singular if he could not at any time go to it with his complaint or for instructions in regard to any matter touching the fund placed, in his custody."

It will be seen, moreover, that it was the view of the lawmakers that the assets of the corporation could be more wisely administered. by not conferring general powers upon a temporary receiver, but by practically placing the corporation in the hands of the court, and; conferring upon the court the right to enlarge the powers of or give additional authority to the temporary receiver when in a given case it was shown to be necessary for the wise and proper administration. of the affairs of such insolvent corporation.

The theory of the law providing for a temporary receiver is, that: until the final judgment is entered in the action declaring the corporation to be insolvent and that its affairs are to be wound up and. its assets distributed, the temporary receiver may have to be discharged, and that he should only interfere with the assets pending the litigation just so far as is necessary to preserve them, and that he should not be allowed to sell or dispose of them except from necessity, and then upon application to the court.

With respect to the present application, the law was correctly laid down by the court, because the right of set-off exists between. the bank and its depositor upon cross demands where both are due. Here no demand having been made by the depositor, his claim was. not due unless such demand is excused by the insolvency of the. bank.

Now, it is not admitted or proved in the case at bar that the Saint Nicholas Bank is or was insolvent. It has yet to be determined, and the temporary receiver has nothing to say on that subject, nor ought he to be called upon to admit or deny that allegation. Yet it is only in the case of proved or admitted insolvency that the person. liable on the call loan can set off his deposit where he had not: demanded payment thereof.

The denial of the motion of the receiver upon the ground that there was no necessity for any instructions was in effect a denial of his right in a proper case to allow a set-off. Even though we assume that there was no doubt as to the right, upon the facts stated, of the depositor to the set-off, the temporary receiver, being without. power, could not allow it without the authorization of the court..

Hence the necessity of the application, leaving it for the court to determine upon the facts presented whether it should grant or refuse it. But the refusal to either grant or deny the application of the receiver upon the ground that there was no necessity for it seems to us to have been error.

The order appealed from should, therefore, be reversed, and the receiver is instructed to apply the balance due to Charles Kurzman, and upon receiving the difference surrender the securities.

FOLLETT, J., concurred.

VAN BRUNT, P. J.:

The petitioner herein was appointed in December, 1893, temporary receiver of the St. Nicholas Bank, and he thereupon duly qualified and entered upon his duties. On the —— day of January, 1894, said receiver presented his petition to this court, alleging that one Charles Kurzman was indebted to the bank upon certain demand loans aggregating $3,000, for the payment of which he had deposited certain collateral securities. He also alleges inferentially that said Kurzman was a depositor in said bank, and that at the time said bank ceased to do business there was standing to his credit as such depositor the sum of $1,145.14. The petitioner further shows that on the 28th of December, 1893, he was notified by said depositor that he was prepared to pay off said loans, applying his balance with said bank as an offset against said loans. The petitioner further alleges that, being in doubt as to the propriety of granting the request of said Kurzman to pay off said loans, and allow the offset of the balance of his deposit as against the amount due and owing by him to said bank on account of said loan and to return said collaterals, he prays the instructions of the court in the premises; and with said petition submitted an order which he desired, directing him to make such offset and to surrender said securities upon payment of the balance remaining due upon said demand loans. The court below refused to make the direction, holding that if the books of the bank showed the facts above set forth, the receiver would be protected in the absence of any suggestion of fraud; and, therefore, it could see no reason for granting the order applied for in this case; and an order was thereupon entered denying said application, and from such order this appeal is taken.

It is admitted by the appellant that if the petitioner was a permanent receiver, there would be no necessity for the application to the court; but it is claimed that what the receiver desired to do in reference to the receipt of this loan he was not permitted to do under his appointment as temporary receiver, because he had no right to assume to dispose of the property of which he was the temporary receiver.

I am unable to see that by the procedure which was desired by the temporary receiver there is any disposition made of any property of the corporation. On the contrary, he is simply collecting debts due to the corporation, which he is in duty bound to do whether he is temporary or permanent receiver.

By the provisions of the Code (§ 1788) under which temporary receivers are appointed, a temporary receiver has power to collect and receive the debts, demands and other property of the corporation, to preserve the property and the proceeds of the debts and demands collected, to sell or otherwise dispose of the property as directed by the court, to collect, receive and preserve the proceeds thereof (namely, of such sales) and to maintain any action or special proceeding for any of those purposes (namely, for the collection, receipt, etc., of the debts, demands and other property of the corporation, or for the collection, receipt and preservation of the proceeds of any sales of property of the corporation made by direction of the court).

Now, the temporary receiver having the right to maintain an action to recover a debt due the corporation, what would be the judgment which the temporary receiver could procure in case he brought suit to recover the loan in question? Clearly for the balance which would be due to the bank after offsetting the amount of the depositor's balance, upon payment of which the receiver would be required to give up the securities pledged as collateral. Now, he having the power to collect and the power to sue, it is difficult to see why he has not power to receive payment upon the same terms which he could get by suit. If a receiver has no power, independent of special directions of the court in each particular case, to surrender the collaterals pledged for a loan with the bank of which he has been appointed temporary receiver, many of the securities of the corporation would be placed in great jeopardy. If

a receiver holds indorsed notes for the payment of which negotiable collaterals have been pledged, in order to charge the indorser the receiver must not only present the notes, but have the collaterals in readiness to be surrendered in case the maker pays the note; and unless these conditions are complied with the indorser is discharged. (*Ocean National Bank* v. *Fant,* 50 N. Y. 474.) If upon payment of loans due to the bank the collaterals held as security for these loans cannot be surrendered by the temporary receiver, how many indorsers may be discharged? This illustration simply shows that a temporary receiver has ample authority to receive payment of loans and surrender collaterals held as security, and he needs no direction from the court to perform these duties.

The idea in obtaining an order of the court undoubtedly is to protect the receiver under all circumstances. But it is only where there are doubtful questions that the receiver is entitled to come to the court for instructions. Where, upon a given state of facts his duty is plain, there is no more reason for a receiver coming to the court for instructions than there is for any other trustee. And gross abuses have grown up because of the facility with which the courts have granted these orders in particular cases. If a receiver is entitled to any instructions they should be in the nature of a rule of action, and not a direction to do a particular thing in a particular case. The court is supposed to know what it is doing when it lays down a rule of action, but it by no means follows when it directs a particular thing to be done in a particular case.

It is undoubtedly true that a temporary receiver is a mere custodian, standing in the place of the court, and is not in any way a trustee for the creditors of the corporation. But he is supposed to be an intelligent custodian, able to manage the ordinary affairs of collecting and preserving the assets of a corporation without specific directions from the court in individual instances as to what should be done. Great stress is laid upon the remarks of Judge DANFORTH in the case of *The People ex rel. the Attorney-General* v. *The Security Life Ins. Co.* (79 N. Y. 263). At page 270 he says: "Since the receiver is an officer sometimes called 'the hand' of the court, it would be singular if he could not at any time go to it with his complaint, or for instructions in regard to any matter touching the fund placed in his custody, and more especially when, as in the

case before us, it is in danger, through his own error, of being unfairly distributed."

This language is to be construed, having in view the facts of the case. In that case, because of the faulty advice given by the receiver, certain creditors were in danger of losing their claims, and the receiver applied to the court to know what should be done, and the court pointed out the way in which the rights of these creditors might be secured. It was this question which was being discussed, and in such a case the court held that the receiver was justified in coming to the court for instructions — a case very different from those which continually arise in the ordinary administration of the affairs of a corporation in the process of liquidation.

That this is the policy of the law is strikingly evidenced by the provisions of section 1789 of the Code, which provides that in addition to the powers conferred upon him by the provisions of the last section, the court may, by the order or interlocutory judgment appointing him, or by an order subsequently made in the action, or by the final judgment, confer upon him the powers and authority and subject him to the duties and liabilities of a permanent receiver, or so much thereof as it thinks proper.

This language clearly shows that if the necessity exists that the temporary receiver should have the powers of a permanent receiver in addition to that which he enjoys as a temporary receiver, the proper course is for the court to give him such powers, and not to direct him to do a particular thing which he would be able to do if he were a permanent receiver. A temporary receiver is no more under the control of the court, and is no more an officer or hand of the court, than a permanent receiver. And it being conceded that if the petitioner were a permanent receiver, he would have the authority to do that which he by his petition in this proceeding asks the court to direct him to do, it seems evident that if any order were necessary (which it seems to me clear it was not) the proper course would have been to confer upon him the powers of a permanent receiver in respect to the subject involved.

As already suggested, this is the clear intention of section 1789. It says that in addition to the powers conferred upon him by the last section (referring to the section which treated of the powers of

a temporary receiver) the court may confer upon him the powers and authority of a permanent receiver or so much thereof as it thinks proper; except that he shall not make any distribution amongst the creditors and stockholders before final judgment unless specially directed so to do by the court. And this is the only case in which special directions are contemplated to a temporary receiver in respect to subjects over which a permanent receiver would have authority by virtue of his appointment.

I repeat that it seems to me clear that it was the intention in the framing of this section, to prevent applications in special cases by a temporary receiver; and to provide, where necessary, that his powers should be enlarged by conferring upon him the powers of a permanent receiver.

In the case at bar, it being conceded that a permanent receiver would have had the right to do that which the petitioner asks to be directed to do, the manifest course to pursue would have been in any event to do nothing more than confer upon the temporary receiver the powers of a permanent receiver in respect to the subject involved. And the court was entirely right in refusing to grant the order asked for, directing the receiver to do a specific thing in a specific case. But, as already stated, it seems to me to be apparent that the temporary receiver had just as full authority to act as any permanent receiver could have had.

The view that it was the intention of the Code that in case additional authority was to be conferred upon the temporary receiver, it was by giving him the power of a permanent receiver, and that for the purposes of the collection of the debts due to the corporation the temporary receiver had the right to do everything that a permanent receiver could do, is further evidenced by the provisions of section 1786. It is there provided that unless additional powers are specially conferred upon him as prescribed in the next section (the next section prescribing how additional power is to be conferred upon the temporary receiver, viz., by giving him the powers of a permanent receiver) a temporary receiver has only the powers specified in this section, and those which are incidental to the exercise thereof. What does this last clause mean? Evidently that the temporary receiver has the right to do everything which is ordinarily necessary to be done in order to collect the debts of the cor-

poration of which he is the receiver. And one of the necessary powers in order to collect such debts is to be at liberty to surrender the collaterals pledged for the debts, and another is to allow the credits and offsets to which the debtor is by law entitled.

I think, therefore, that the order appealed from should be affirmed.

Order reversed.