Henry et al. v. Conley.

## HENRY ET AL. v. CONLEY.

1. PAYMENT: *By note, bill or check.*

   The taking of the note, bill or check of a debtor, or of one of several joint debtors, or of a stranger, for an antecedent indebtedness, is no payment unless it is agreed to be taken as such. It is only conditional payment, dependent on the payment of the paper. If that is dishonored the original debt revives.

2. SAME: *Same. Surrender of note for check.*

   The surrender and cancellation of a note upon receipt of a check for it, is no evidence that the check was in satisfaction of the note. The surrender in such cases is conditional upon the payment of the check.

3. SAME:

   Henry, Woods and McReynolds gave to Conley their joint and several promissory note for borrowed money, payable January 1, 1885. Before maturity of the note they provided money to pay it, which was deposited in McReynolds' bank as a general deposit and mixed with the funds of the bank. On the 3d of January, Conley presented the note to McReynolds for payment. McReynolds paid the interest in cash, and gave him checks on a bank in St. Louis for the principal. One of the checks was paid, the other dishonored. McReynolds did not at any time between the drawing and dishonor of the checks have sufficient funds in the St. Louis bank to pay both checks. Soon afterwards, McReynolds and his bank became insolvent, and Conley sued the makers on the note and the defendants pleaded payment. *Held:* That the deposit being general the funds became the bank's and the bank became debtor to the depositors, and the deposit and subsequent transactions between Conley and McReynolds were no defense to the action.

APPEAL from *Benton* Circuit Court.

Hon. J. M. PITTMAN, Judge.

*Sol F. Clark & Son,* for appellants.

A higher security taken from the debtor himself extinguishes the original contract. But this was only a pre-

sumption of payment, and might be rebutted by evidence that the new security was absolutely void for fraud. *8 Ark., 213; 28 ib., 66; 9 ib., 339; Chitty on Bills, 433; Chalmer's Dig., 231; 46 Mich., 29; 131 Mass., 467; 78 Ind., 54; 4 Mo. App., 94; 68 Ind., 254; 7 Wait's Ac. and Def., 409.*

Conley's remedy was on the drafts. The acceptance of the drafts of McReynolds by Conley, and the surrender and cancellation of the note were payment absolute, so far as Henry and Woods were concerned, though not as to McReynolds, and if not, the actions and conduct of Conley in connection with the drafts, were such as to estop him as a matter of fraud against them in a court of law from any demand against them on the note, or otherwise. *14 Howard, U. S., 240, 249; 26 Md., 179; 25 Iowa, 364; 40 Ala., 633; 21 Wis., 432; 49 Penn. St., 65.*

In this case the defendants lost their money set apart for the payment of the note by the taking of the drafts. *24 Pick., 13.*

In all cases the taking of a bill of exchange from the maker of a note is absolute payment, if so agreed or understood by the parties. It is not necessary to prove an express agreement of payment. It may be shown by facts and circumstances. *42 Ala., 149; 45 Mo., 150; 2 Cliff., 4; ib., 130; 20 N. J. Eq., 39; 27 Barb. (N. Y.), 192; 32 Penn. St., 493; 35 Ill., 9; 2 Duer., 133.*

In ordinary transactions a check on a specie-paying bank, payable on demand, is payment. *14 How. (U. S.), 249.* And it will be payment in all cases, if the payee or holder neglects to take steps to obtain payment of the bill, or neglects to give notice of non-payment. *24 Wis., 607; 20 N. J., 39., 14 Eng. L. and Eq., 269.*

Henry and Woods lost their funds by reason of Conley's delay. If the checks had been presented in time, the funds were there and they must have been paid.

*Their loss was occasioned indirectly by his fault.* By Conley's acts he is estopped from denying payment of the note. *2 Parsons on Cont., 793, note q; Bigelow on Estoppel, 437, et seq., 532.*

*U. M. & G. B. Rose* and *E. S. McDaniel,* for appellees.

A neglect to present a check immediately does not discharge the drawer. The drawer of a check is not discharged by the holder's omission to present it for payment within a reasonable time, or to give due notice of dishonor unless the drawer has suffered actual damage through the delay. *Benjamin's Chalmer's Dig., p. 264, Art. 258; Morse on Banks, etc., 2d Ed., p. 281; 10 Wall., 647.*

If the checks had been paid they would have operated as payment of the note; but as they were not paid, the parties stand just as though they had never been given. *9 Ark., 339; 8 ib., 213; 32 ib., 733.*

A creditor *may* accept a check in payment and absolute discharge of the debt, but where a check is received by a creditor, there is no presumption that he takes it in payment, but on the contrary, the implication is that it is only payment *if cashed. 2 Dan. Neg. Inst., 1st Ed., sec. 1623; Benj. Ch. Dig., p. 254.* See, also, *4 Watts & S., 100; 1 Peur. & W., 375; 49 Penn. St., 65; ib., 83; 1 Hun., 451; 1 Cow., 359; 3 Comst., 168; Quincy (Mass.), 180; 17 Johns., 340; 11 Ind., 22; 5 Ohio, 22; 5 Hammond, 353; 15 Ohio St., 169; 28 Ill., 46; 8 Foster (N. H.), 40; 20 Barb., 532; 16 ib., 245; 4 Sneed, 229; 66 Ill., 351; 58 Ind., 221.*

Moreover, these checks were drawn against a bank in which McReynolds had no funds. This was a fraud. *2 Dan. Neg. Inst., 1st Ed., 546; Morse on Banks, etc., 2d Ed., 37, 273.*

Appellant's exceptions are all general. They avail

nothing unless specific. *28 Ark., 8; 32 ib., 223; 38 ib., 528; 39 ib., 337.*

SMITH, J.    Henry, Woods and McReynolds borrowed from Conley $2400, giving their joint and several promissory note, payable January 1, 1885. Before maturity of the note, the makers had provided money to pay it and some other debts due by them. This money was put into McReynolds' bank as a general deposit, and was mingled with the other funds of the bank.

On January 3, 1885, Conley presented the note for payment to McReynolds. After conversation, Conley concluded to take the interest in cash, and St. Louis exchange for the principal. McReynolds accordingly paid the interest, and gave Conley two checks on the Third National Bank of St. Louis for $1200 each. The note was surrendered to McReynolds, who marked it paid, and on the same day handed it to Henry. Conley forwarded the checks to St. Louis, but neglected to indorse them. Hearing nothing from them, and becoming uneasy, Conley went to McReynolds, on January 10th, and got the money for one of the checks, and McReynolds telegraphed stopping the payment of it. Conley went home to Siloam Springs, where he received a letter enclosing the checks unindorsed. Not knowing which of the checks it was the payment of which had been stopped, he indorsed both and sent them on for collection. They reached St. Louis and were protested January 16th for want of funds of the drawer. Notice of non-payment reached Conley and McReynolds between that date and the 21st. On the 21st, McReynolds' bank suspended payment and McReynolds is hopelessly insolvent. At the time of giving the checks the account of McReynolds with the Third National Bank of St. Louis was overdrawn $681.79. Nor did he at any

time between the 3d and 10th of January have to his credit there a sum sufficient to pay both checks. Nor after he had paid the amount of one of the checks on the 10th, did he thereafter have enough to his credit to pay the other check.

Conley now brought his action against the makers of the note. The defendants pleaded payment. The case was submitted to the court, instead of a jury, upon evidence which showed the foregoing state of facts, about which, indeed, there was no dispute. The court declared the law as follows: " Proof that a joint maker of a note giving his check on a bank in payment where he had no funds, and a surrender of the note for such check, will not sustain a plea of payment." And it gave judgment against all the defendants for the balance due on the note.

The taking of the note, bill or check of a debtor, or of one of several joint debtors, or of a stranger for an antecedent indebtedness, is no payment, unless it is agreed to be taken as such. It is only conditional payment, dependent on the payment of the paper. If that is dishonored, the original debt revives. *Story on Promissory Notes, sec. 104; 2 Daniel on Neg. Instr., sec. 1260, et seq.; 2 Randolph on Commercial Paper, sec. 750; 2 Am. Lead. Cas., 263, et seq.; notes to the case of Tobey v. Barber.* Such has been the settled law of England ever since the time of Lord Holt (*Clark v. Mundal, 1 Salk., 124*), and such is the law of all the American states, except Massachusetts, Maine, Vermont, Indiana and Louisiana. The more recent decisions of this court are in perfect harmony with this rule. *Brugman v. McGuire, 32 Ark., 733 ; Akin v. Peters, 45 ib., 313 ; Malpas v. Lowenstein, 46 ib., 552.*

Counsel for appellants contend that checks stand on a different footing in this respect from notes and bills of exchange. It is true that a check is drawn on a bank or

1. PAYMENT:
By note, bill or check.

banker, and that it is payable on demand without days of grace, but it is no payment unless duly honored—only a means of getting paid. Nor do the adjudged cases recognize any such distinction. *Alcott v. Rathbone, 5 Wendell, 490; Turner v. Bank of Fox Lake, 3 Keyes, 425 ; S. C., 4 Abbott's App. Dec., 434; Heartt v. Rhodes, 66 Ill., 351; People v. Howell, 4 Johns., 296, per Kent, C. J.; McIntyre v. Kennedy, Childs & Co., 29 Pa. St., 448.*

The law on this subject is thus stated by Mr. Daniel in his work on *Negotiable Instruments, 3d Ed., sec. 1623:* "In respect to payment by check, a creditor may, if he pleases, accept a check in absolute discharge of a debt; but where a check is received by a creditor, there is no presumption that he takes it in payment; but, on the contrary, the implication is that it is only to be regarded as payment *if cashed.* And so strong is this implication, the check being presumptively drawn on a fund deposited to meet it, that more evidence is required to prove that a check given to take up a note is received in satisfaction and discharge than is demanded when one note is given for another."

Accordingly, we find that, even in some of those states where the acceptance of a bill or note on account of a precedent debt is presumed to be in satisfaction of it, the same presumption does not arise when a check is received. *Small v. Franklin Mining Co., 99 Mass., 277; Ocean Tow Boat Co. v. Ship Ophelia, 11 La. Ann., 28.*

2. SAME: Surrender of note for check. Nor is any agreement that the checks shall be satisfaction implied from the surrender and cancellation of the note. The surrender under such circumstances was conditioned upon the payment of the new security. It is like the case of a creditor giving up the former evidence of his debt and executing a receipt. *Muldon v. Whitlock, 1 Cowen, 290; Davis v. Allen, 3 Comst , 168; Alcott v. Rathbone, supra; Turner v. Bank of Fox Lake, supra; Jagger*

*Iron Co. v. Walker, 76 N. Y., 521; Doebling v. Loos, 45 Mo., 150; Heartt v. Rhodes, supra.*

It is further insisted that the defendants had provided a fund to meet their note at maturity, and that this imposed upon Conley the duty of protecting the interests of Henry and Woods in his dealings with McReynolds. There is no proof that Conley had any notice of this arrangement. But if he had known all the circumstances it would not have altered the legal aspects of the case. The relation between a bank and a general depositor is that of debtor and creditor. Consequently, when the money which had been raised to pay Conley's note was put into McReynolds' bank as an ordinary deposit, it then belonged to the bank and the bank became debtor to the depositors. *Himstedt v. German Bank, 46 Ark., 537.*

The delay in presentment of the checks is not important, because the bank on which they were drawn remained solvent all the time. McReynolds suffered no actual damage thereby. And the only effect upon the other two defendants of giving the checks was to suspend Conley's right of action against them until the checks were dishonored by non-payment. *2 Daniel Neg. Instr., 1272, 1587.*

Judgment affirmed.