## CHURCHILL *v.* YEATMAN-GRAY GROCER COMPANY.

## Opinion delivered February 23, 1914.

1. BILLS AND NOTES—ENDORSER AND ENDORSEE—RELATIONSHIP.—A debtor delivered two post-dated checks endorsed by himself, to his creditor, and the latter deposited them in a bank, with the understanding that they were not taken in payment, but if paid by the drawer the proceeds were to be applied on the debt; *held*, where the debtor knew when he endorsed the check that the drawer had no funds in the bank, and the creditor merely placed them in the bank until the drawer should have funds enough to meet the checks, and the drawer never made such a deposit, the facts do not establish the technical relationship of endorser and endorsee between the debtor and creditor within the rules of the Law Merchant. (Page 536.)

2. BILL AND NOTES—ANTECEDENT DEBT—PAYMENT.—The check of a debtor taken by a creditor for an antecedent indebtedness is not payment or satisfaction of the debt, unless the parties agree it shall have that effect. (Page 536.)

3. BILLS AND NOTES—CHECK—NO FUNDS—KNOWLEDGE—PAYMENT—NOTICE OF DISHONOR.—A. drew a check on a bank in which he had no funds, the payee of the check with knowledge of the facts endorsed the check and delivered it to B., his creditor, who also had knowledge of the facts; *held*, B. did not receive the check either as an absolute or conditional payment of the endorser's debt, nor was the endorser entitled to notice of the dishonor of the check. (Page 537.)

4. BILLS AND NOTES—REQUEST TO HOLD UP CHECK—WAIVER OF NOTICE.— A request to the endorsee of a check by the payee and endorser, to hold up the check a few days as an accommodation to the drawer and endorser, is sufficient to warrant a finding of waiver of notice of presentment, nonpayment and protest. (Page 537.)

5. BILLS AND NOTES—WAIVER OF NOTICE—PROOF.—Waiver of demand and notice of nonpayment, when not endorsed on the instrument, can be shown by facts and circumstances *aliunde*. (Page 538.)

Appeal from Independence Circuit Court; *R. E. Jeffery*, Judge; affirmed.

### STATEMENT BY THE COURT.

This suit was begun in the justice of the peace court by appellee against appellants upon an itemized account. The complaint alleged that the defendants were indebted to the plaintiff in the sum of $209.30. The itemized ac-

count attached amounted to $487.90, and after deducting the credits it was claimed that the balance due was $209.30.

The defendants, in an oral defense, set up payment of the account. Judgment in the justice court was in favor of the plaintiff, and the defendants appealed to the circuit court. In the circuit court the defendants tendered $5 in full satisfaction of the debt, which the plaintiff refused. The cause was submitted on the same issues in the circuit court, the court sitting as a jury to try the same.

To support their plea of payment the appellants claimed that the account had been paid by the delivery of two checks of $100 each, bearing dates respectively April 20, 1911, and May 15, 1911. They were post dated and delivered to the plaintiff by defendants early in April, 1911, to be presented to the bank on which they were drawn on their respective dates. The plaintiff admitted the receipt of the checks, but claimed that it received them with the understanding that it was to hold the same until the drawer, Woods Thomas, made a deposit with the bank, when plaintiffs were to present the same, and if the checks were paid the amount thus received was to be credited on the account of the plaintiff.

The sole issue presented to the court on the facts was as to whether the defendants were entitled to have the amount represented by these checks credited on their account. There was a sharp conflict in the evidence as to whether the checks were received by appellee in payment of the account sued on.

The only witness for the appellants testified that he bought the goods; that he turned over to the plaintiff two checks given by Woods Thomas; that the plaintiff agreed to take these checks and hold them until Woods Thomas made a deposit to meet them. He never deposited the money. He was to have deposited for the first check on the 20th of April and for the second check on May 15, 1911. The checks were returned to witness after about forty days, not protested. The checks were

endorsed by witness. Plaintiff did not notify witness that the checks had not been paid until June 2. After the checks became due and were not paid and before witness received any notice that they had not been paid he sold goods to Thomas, the drawer of the checks, amounting to the sum of $200, thinking the checks had been paid off. The failure on the part of the plaintiff to give witness notice that the checks had not been paid thus damaged defendants in the sum of $200.

Witness did not remember writing the plaintiff asking it to hold up presenting the first check for a few days about the time the same became due. After the checks became due and same were not paid witness never promised to pay plaintiff's account. Witness did not remember writing to a member of the firm of plaintiff requesting him to hold up the presentation of the first check. Witness did write the following letter to Charlie Cole, the attorney for the plaintiff, of date November 21, 1911: "Dear Sir: Your letter came yesterday in regard to Northern-Yeatman account. Now, I think they ought to join in with me and try to collect this account from Thomas. Of course, I don't aim to try to beat them out of this amount, but I feel like they ought to help induce the old man to pay it. I aim to settle everything by the first of the year and of course their account will be considered."

Witness stated that he intended that the above letter should be construed to mean that he would settle everything if the Thomas matter was collected.

The testimony on behalf of the plaintiff was substantially as follows: The checks were presented to plaintiff by one of the defendants who requested that plaintiff present them to the bank on the dates on which they were to be paid. They were post dated. Plaintiff agreed to do this, and a few days before they were due defendants wrote plaintiff to hold up the checks a few days; but plaintiff presented the checks to the bank, left them with the cashier of the bank and asked him, if the

money was deposited there, to protect the checks, and he agreed to do so.

The plaintiff received from the defendants a letter written by Woods Thomas, addressed to defendants, in which he stated as follows: ''The check I gave you for $100 due the 20th I fear will not be honored if presented on that date, as it will be after that date before we get returns for the lumber we shipped out; and you will remember, Mr. Yates, what I told you about a certain note against this mill for $130, which has to be paid now, or the 'fur is going to fly.' I hope you can hold our checks along so as to make them fit in with my bank account.'' (Signed) ''Woods Thomas.''

On this letter Yates, for Churchill & Yates, endorsed the following: ''I send you Mr. Thomas's letter he sent me today. If you can take care of that check for him a few days it will be an accommodation to him as well as me.'' And, with this notation, the letter was sent to plaintiff.

The witness, continuing his testimony, stated that the checks were turned over to plaintiff for collection. We were to apply the amount of the checks to the account when collected. We presented them before they were due; left them with the cashier of the bank, and after payment was refused we returned them to Churchill & Yates and told them they were not paid. Plaintiff had not endorsed them. The letter returning the checks to Churchill & Yates was dated June 5, 1911, addressed to Churchill & Yates, and stated: ''Gentlemen: We hand you herein checks signed by Woods Thomas as we are unable to get them cashed.'' Signed by plaintiff. The defendants returned the checks by the next mail and asked plaintiff to try again and plaintiff wrote them that it was useless to try.

Defendants made some payment on their account after that—on June 22 a payment of $40, and on August 19 a payment of $50.

Plaintiff, after the above transaction, sent defendants statement of their account the first of every month.

These statements did not show that plaintiff had given defendants any credit for the amount of the checks and defendants never made any objections to the statements mailed them because they failed to contain a credit of the amount of the checks.

On cross examination the witness testified that Yates, for the defendants, agreed to turn the checks over to plaintiff on his indebtedness, or to be credited on his account when they were paid, but if they were not paid he was not to have credit. "It was a conditional payment. If we collected we were to credit his account, otherwise no credit was to be given him." Yates endorsed the checks when he turned them over to plaintiff. The checks were endorsed in blank. Plaintiff explained to the cashier, in fact showed him, the letter requesting plaintiff to hold up the checks, and every few days one of the firm of plaintiff would call there and ask if the money had been deposited and the cashier would say that it had not. Plaintiffs presented the checks for payment on the date they were due and they were not paid. Plaintiff notified Yates that the checks had not been paid on the 5th of June. Yates bought some goods from plaintiff after the checks had been presented, which goods were charged on the books of plaintiff, and they made some payments on their account after that time, amounting to $90. The understanding with defendants was that plaintiffs were to give credit for the amount of the checks if they were paid. Defendants gave them to plaintiff with the understanding that if there was a surplus after the checks were paid, defendants were to take the amount of such surplus in trade. The statements were rendered to the defendants by plaintiff on the first of May and the first of June. The checks were not taken to the bank until about the time the last one was due; then they were both taken to the bank and left with the cashier. A statement was sent to the defendants on July 1 which showed a credit of $40 paid June 22 and also a statement was sent on September 1, which showed a credit of $50 on August 19.

Upon the above facts the court rendered judgment in favor of the plaintiff in the sum of $209.30 with interest from February 1, 1912, and this appeal has been duly prosecuted.

*Samuel M. Casey,* for appellants.

1. The failure of the appellee to give notice to appellants of the nonpayment of the checks released them from any liability thereon as endorsers. 31 Am. St. Rep. 552, and cases cited; 118 Am. St. Rep. 537; 7 Cyc. 1082-3 *et seq.;* 33 Ark. 49; *Id.* 778; 37 Ark. 281; 84 Ark. 366.

2. If appellee took the checks in conditional payment, as appellee claims, that does not alter the status of the case. Arkansas cases, *supra;* 83 Am. Dec. 756; 7 Cyc. 970; 143 S. W. 597.

3. Appellants, having been discharged from liability on the checks by reason of the failure to give notice of nonpayment, they can not be sued on the original consideration or account, and are entitled to a credit on the account for the amount of the checks. 33 Ark. 33; 37 Ark. 276, 281, 282; 143 S. W. 597, 600; Daniel on Negotiable Instruments, § 971.

*Oldfield & Cole,* for appellee.

1. The taking of a note, bill or check of a debtor or of a stranger for an antecedent debt is no payment unless it is agreed to be taken as such. 48 Ark. 267-271; 46 Ark. 552; 45 Ark. 313; 75 Ark. 556.

2. It may be conceded that a bill of exchange sent in the regular course of business, and accepted by a creditor as a payment, if not paid when presented, should be timely protested, unless there was some other or different understanding between the parties, or unless the debtor has expressly or by implication waived protest. But this is not a suit based upon the checks, but upon a balance due on account. Moreover, there was no reason, under the circumstances of this case, why appellee should have protested checks which were turned over to it merely to deliver to the bank, which was done—checks

which were to be held (not protested) until Woods Thomas made a deposit to meet them.

Appellee was without authority to protest the checks, but if it had had such authority, the facts establish a waiver of notice of nonpayment and protest. 33 Ark. 771-778; 35 Am. Rep. 604.

3.  Appellants are liable as for an account stated, they having failed to object at any time to any of the many statements rendered because they had not been given credit for the amount of the checks.   43 Ark. 502; 53 Ark. 155.

WOOD, J., (after stating the facts).   There is no special finding of facts, and the court must consider the facts in the most favorable view for appellee that could have been taken by the trial court.   When the facts are considered in this light, we are of the opinion that the circuit court might have found that the checks referred to in the testimony were not given to the appellee by the appellants in payment, either absolutely or conditionally, of the latter's debt to the appellee.   But, on the contrary, that they were endorsed by appellants and given to the appellee to hold until the drawer of the checks made a deposit of money in the bank; then if the bank honored the checks appellee was to credit the amount thereof to appellant's account.

The peculiar facts of this record distinguish the case from those cases which hold that where a creditor accepts a check drawn by a third party in favor of the payee and endorsed by the payee in payment of the payee's debt to such creditor, that it is the duty of the creditor, if the check is not paid on presentation, to give notice of protest and nonpayment to the endorser within a reasonable time, and failure to give this notice on the part of the creditor or endorsee releases the endorser from his debt to the creditor or endorsee.

The rule, well established, as stated in *First National Bank of Detroit* v. *Currie*, 118 Am. St. Rep. 537-541, is as follows: "The undertaking of the endorser of a check is that, if not paid on presentation within a rea-

sonable time, he will pay it, provided he is properly notified. Such reasonable time for presentation and demand for payment is admitted to be within the day following the endorsement. * * * The fact that there are no funds in the account against which the check is drawn does not relieve the holder from presentation and notice of dishonor to the endorser, unless it appears that the endorser knew it."

But here the check was not endorsed by the appellants to the appellee and received by the latter in due course or in such manner as to bring the parties within the above well known rule of the law merchant. See *Adams* v. *Boyd,* 33 Ark. 49; *Minehart* v. *Handlin,* 37 Ark. 281.

The testimony, viewed in the strongest light for the appellee, shows that these checks were not taken as payments but were only taken to be left at the bank, at the request of the appellants, for collection, and if they were paid that appellee should credit the amount on appellants' debt with appellee. The appellants knew at the time when the checks were endorsed by them that the drawer of the checks had no money then in bank with which to pay the checks. The appellee held the checks merely for the purpose of depositing the same in the bank so that the latter might hold the same until the drawer should deposit money in the bank to meet the checks; and the drawer of the checks never made such deposit.

The peculiar facts, as stated, did not, in our opinion, establish the technical relation of endorser and endorsee between the appellants and the appellee within the rules of the law merchant.

The taking by a creditor of a note, bill or check of a debtor for an antecedent indebtedness is not a payment or satisfaction of the debt unless it is agreed by the parties that it shall have that effect. *Sharp* v. *Fleming,* 75 Ark. 556; *Henry et al.* v. *Conley,* 48 Ark. 267. Under this rule, the testimony does not show that the appellants

and appellee agreed that the checks were to be taken as payments, either absolute or conditional.

Appellants rely upon the case of *Minehart* v. *Handlin, supra,* where this court announced that where a bill of exchange was taken in payment of a debt, whether absolute or conditional, that it was the duty of the holder of the bill of exchange to present the same for payment and to give notice of its dishonor to the drawer, and his failure to do so would discharge the latter both from the bill and the original debt it was given to pay. In that case Minehart, being indebted to Handlin, gave him an order on J. N. Sarber for the amount. Sarber was indebted at the time to Minehart in a larger amount than the amount of the order and had authorized Minehart to draw the order. The order was given by Minehart to Handlin in settlement of the account. The facts as thus stated are entirely different from the facts of the present record. There the drawer had effects in the hands of the drawee at the time that he gave to the payee the order and the drawee had authorized the drawer to give the order or bill in favor of the payee. But no such facts exist here. The bank, at the time the checks were issued in this case and at the time the same became due, had no funds in its hands to the credit of the drawer. It had not authorized the drawer to issue these checks, and appellants, as the payee and endorser of the checks, knew at the time that the maker thereof had no funds in the bank with which to pay the same. Certainly under these circumstances the appellee can not be held to have received the checks either in absolute or as a conditional payment of appellants' debt.

Even where the technical relation between endorser and endorsee exists, where it appears that the endorser knows at the time that there are no funds in the hands of the drawee to the credit of the drawer he can not be relieved of liability and is not entitled to notice of the dishonor of the check or bill of exchange.

Furthermore, the facts in this case were sufficient to establish a waiver of notice of nonpayment and pro-

test, even if the relation of endorser and endorsee obtained between appellants and appellee. The request by the appellants of the appellee that the latter should hold the checks in order to accommodate the drawer for a few days and also to accommodate the appellants was sufficient to warrant the court in finding that the appellants waived notice of presentment, nonpayment and protest. Waiver of demand and notice of nonpayment need not be endorsed on the instrument but can be shown by facts and circumstances *aliunde. Andrews* v. *Sims,* 33 Ark. 771.

The judgment of the circuit court is correct, and it is affirmed.