ARK. FARMERS ASSN., INC. *v.* YOHE.

5-1236                                      300 S. W. 2d 589

Opinion delivered April 8, 1957.

*John R. Thompson,* for appellant.

*John M. Lofton, Jr.,* and *Owens, McHaney, Lofton & McHaney,* for appellee.

PAUL WARD, Associate Justice. The only issue presented by this appeal is a legal question. It is: Do the undisputed facts, concerning an attempted settlement between appellant and appellee, constitute an accord and satisfaction?

Appellee, Carl Yohe, a substantial farmer, raised a special type of seed oats in 1953 and 1954. In 1953 he secured and used a type of oats, designated as "Arkwin," which had been developed by the University of Arkansas. Appellee also planted a crop of the same type of oats in 1954, which he sold to appellant, Arkansas Farmers Association, Inc. A dispute over the terms of this sale germinated this litigation.

It is admitted by both sides that seed oats are graded as to quality, and that the sales price depends on the grade. In this case, it is also admitted, that if the oats were *certified* by the State Plant Board they would bring a higher price. Apparently there are, at least, two different grades of certified oats. One grade is known as "Blue Tag" and brings a higher price, and the other is known as "Red Tag."

In the Spring of 1954 Mr. Ben Isgrig, head of the seed department of appellant, entered into an agreement with appellee to buy his oat crop for that year. Mr. Isgrig and Mr. Yohe differ as to the terms of that agreement, and that turns out to be the cause of this litigation. For the purpose of this opinion it is only necessary to set out the main point of · disagreement. Mr. Isgrig says he agreed to pay appellee 85 cents per bushel for the oats if they graded "Blue Tag," otherwise the price was to be 75 cents per bushel. Mr. Yohe says he was to receive 85 cents per bushel for his oats if they were certified by the Plant Board. It turned out that the oats were *certified* but not as "Blue Tag."

After appellee harvested his 1954 oat crop, amounting to 16,332 bushels, he made delivery to appellant.

When appellee called at appellant's office in the absence of Isgrig, for his pay, one of the clerks gave him a check, computed at 85 cents per bushel, after appellee assured him the oats were *certified* as per agreement with Isgrig.

A short time later, when he learned of the settlement, Isgrig wrote appellee to the effect that a mistake had been made, and demanded a refund of 10 cents per bushel, or $1,633.20.

Some months later Yohe went to appellant's office and discussed the matter with Mr. Isgrig. For some time Mr. Isgrig and Mr. Yohe both stood firm on their own understanding of the sales agreement. Finally, after Mr. Isgrig threatened suit, Yohe agreed to pay $1,600 and gave his check to appellant for that amount. However, upon returning home, Yohe stopped payment on the check.

The original complaint filed by appellant was on the $1,600 check given by Mr. Yohe, but after appellee asked to have the complaint made more definite and certain, an amendment was filed setting out the facts much as we have detailed them heretofore. The last sentence in the complaint reads as follows: ''A full and complete understanding having been reached and the check having been issued by Defendant in settlement of said account, this suit is brought by the Plaintiff and based upon the settlement compromise and agreement, and the check given in payment of the balance due by Defendant thereon.''

In his answer appellee denied that any agreement was reached whereby he would make a refund to appellant but stated; that he was induced to issue his refund check by misrepresentations on the part of appellant and that when he discovered such misrepresentations he stopped payment on the check, and; further answering, appellee stated ''that he delivered to the plaintiff oats that had been graded by the State Plant Board and met the grade that he had contracted to deliver to the plaintiff. That he was paid by the plaintiff for said

oats at the rate of 85 cents per bushel in accordance with their understanding and agreement.''

After the introduction of testimony regarding the original purchase agreement between appellant and appellee and regarding the subsequent settlement agreement, the matter was submitted to a jury under two instructions given by the court, one of which was requested by appellant and the other was requested by appellee. Appellant's requested instruction submitted the theory of accord and satisfaction. Appellee's requested instruction was based on the original agreement. The jury returned a verdict in favor of appellee.

After careful consideration of the able briefs presented by both sides we have reached the conclusion that appellant had no right to maintain his suit on the check for $1,600 upon which payment had been stopped. This being true appellant cannot take advantage of any error on the part of the trial court in giving the first instruction. It was given at the request of appellant and it presented appellant's side of the case more favorably than it was entitled to under the law.

At the close of all of the testimony appellant requested a directed verdict which was refused by the trial court. It was and is the contention of appellant that the undisputed facts in this case show that the settlement reached between appellant and appellee and the giving of the check for $1,600 by appellee constituted an accord and satisfaction.

We agree with appellant that there is no dispute concerning the essential facts of the alleged agreement, but we have reached the conclusion that appellant cannot prevail for the reason that there was no satisfaction. If the check for $1,600 had been cashed by appellant we would agree that an accord and satisfaction had been reached, but such is not the situation. This court has many times held that the giving of a check upon which payment has been stopped does not constitute payment. In the case of *Sharp* v. *Fleming,* 75 Ark. 556, 88 S. W. 305, this court said: ''Giving the check, which was never

paid, was not an extinguishment of the original debt, unless shown to have been accepted absolutely in payment.'' In this case there is no testimony to show that appellee's check was so accepted. The *Sharp* case, *supra,* was cited with approval in *Churchill* v. *Yeatman-Gray Grocer Co.,* 111 Ark. 529, 164 S. W. 283, where the court, at page 536 of the Arkansas Reports, said: ''The taking by a creditor of a note, bill or check of a debtor for an antecedent indebtedness is not a payment or satisfaction of the debt unless it is agreed by the parties that it should have that effect.''

*Williston On Contracts, Revised Edition,* Vol. 6, § 1847, has this pertinent statement relative to accord and satisfaction:

''It is often extremely difficult to determine as a matter of fact whether the parties agreed that the new promise should be itself the satisfaction of the original cause of action, or whether they contemplated the performance of the accord as the satisfaction. Unless there is clear evidence that the former was intended, the latter kind of agreement must be presumed, . . .''

Courts and textwriters generally recognize that there are two essential components in every accord and satisfaction, and that both, considered separately, are essential. In 1 C. J. S., page 462, under the title ''Accord and Satisfaction,'' we find:

''An 'accord' is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is, or considers himself, entitled to; and a 'satisfaction' is the execution, or performance, of such an agreement.''

The same citation emphasizes ''satisfaction'' this way:

''An 'accord and satisfaction,' therefore, consists of the two elements expressed in the phrase, and designates the completed transaction; it is the agreement and its performance, . . .''

The same rule is expressed in 1 Am. Jur., page 252, this way:

"Ordinarily, in the absence of an express or implied agreement to take a check or note in satisfaction of a debt, there is no extinguishment of the claim on the theory of accord and satisfaction until the instrument is paid, since, by the taking of the note, there is merely an accord executory, and not a satisfaction."

*Restatement of Contracts*, § 417, under topic "Discharge by Accord and Satisfaction," *Comment a,* says: "Satisfaction takes place when the accord is performed."

Applying the rules announced above to the undisputed facts in the case under consideration, the conclusion is inescapable that appellant cannot maintain this suit on the ground of an accord and satisfaction, because there was no satisfaction.

Since the cause was properly tried on both sides' version of the terms of the original sales agreement, the judgment of the trial court must be sustained.

Affirmed.

Justice GEORGE ROSE SMITH concurs.

GEORGE ROSE SMITH, J. (concurring). In the usual case an accord and satisfaction is pleaded by the debtor as a defense to the creditor's suit upon the original obligation. In that situation it is familiar law that the debtor's original obligation is not discharged unless the subsequent agreement of accord has been fully executed, or, in other words, has been satisfied. Here, however, it is the creditor who is suing upon the agreement of accord, and I think the majority are in error in holding that in this situation a satisfaction of the accord must be proved.

The fallacy is readily apparent from the majority opinion itself. It is said that "we have reached the conclusion that appellant cannot prevail for the reason that there was no satisfaction. If the check for $1,600 had been cashed by appellant we would agree that an

accord and satisfaction had been reached, but such is not the situation.'' Thus the appellant is being told that the reason it cannot sue upon the check is that it failed to cash the check and collect its money. Needless to say, had the appellant succeeded in collecting its claim it would not have brought the present action.

Despite my disagreement with the majority's reasoning I think the judgment should be affirmed. An agreement of accord is a contract and, like any other contract, must be supported by a consideration. *Levy* v. *Very,* 12 Ark. 148; *DeSoto Life Ins. Co.* v. *Jeffett,* 210 Ark. 371, 196 S. W. 2d 243; Rest., Contracts, § 417. If the accord is a valid contract the creditor may, as the Restatement points out, sue upon the accord rather than upon the debtor's original obligation. That is what the appellant did in the case at bar, basing its complaint upon the check rather than upon the original transaction by which the appellee was assertedly overpaid for his crop of oats.

The jury's verdict for the defendant necessarily means that the jury accepted Yohe's version of the original agreement, for under the court's instructions there is no other basis on which the jury could have found for Yohe. Hence the jury found that Yohe was entitled to receive eighty-five cents a bushel for certified oats, regardless of the exact grade of certification. This being true, Yohe owed the appellant absolutely nothing when he delivered the check now sued upon, for he was justly entitled to every cent that he had received. There was therefore no consideration whatever for the agreement of accord, and since the check has not passed into the hands of a holder in due course the absence of consideration is a complete defense to the plaintiff's claim.