AKAMINE & SONS, LTD., a Hawaii Corporation,
Petitioner, *v.* HAWAII NATIONAL BANK,
HONOLULU, Petitioner-Intervenor-Appellant, *v.*
AMERICAN SECURITY BANK, Respondent-Appellee

No. 5129

NOVEMBER 21, 1972

RICHARDSON, C.J., ABE, LEVINSON,
KOBAYASHI, JJ., AND CIRCUIT JUDGE M. DOI
IN PLACE OF MARUMOTO, J., DISQUALIFIED

OPINION OF THE COURT BY ABE, J.

This case has come before this court on two prior occasions.[1] It involves competing claims of the Hawaii National Bank and the American Security Bank for the proceeds of a mortgage foreclosure sale. At issue here are the trial court's ruling that American Security Bank had standing to contest the amount awarded Hawaii National Bank, its holding that only $24,296.27 was due Hawaii National Bank on its loan, and its award of attorney's fees to American Security Bank but not to Hawaii National Bank.

The initial controversy was instituted when Akamine & Sons, Ltd., brought an action to enjoin the American Security Bank's sale of property mortgaged by Akamine & Sons. Hawaii National Bank, which also held a mortgage on the same property, intervened. The trial court denied the injunction and the property was sold. Akamine & Sons did not appeal from that order. The suit consisted of disputes between the American Security Bank and the Hawaii National Bank over who had priority to the proceeds of the foreclosure sale.

## I. The Standing of a General Creditor to Contest the Amount Due a Mortgagee in a Foreclosure Proceeding.

Hawaii National Bank argues that American Security Bank had no standing to contest its claim against Akamine & Sons. Hawaii National Bank contends that once it was determined that only two of the loans of American Security Bank were secured, American Security Bank's only interest in the remainder of the foreclosure proceeds was as a general creditor, and that general creditors have no standing to intrude in a foreclosure proceeding. For that proposition, Hawaii National Bank cites a string of early cases, all of which pre-date the adoption of our liberal rules on joinder of actions and class actions. *See,*

---

[1]Akamine & Sons, Ltd. v. American Security Bank, 50 Haw. 304, 440 P.2d 262 (1968) and Hawaii National Bank v. Okino, 51 Haw. 367, 461 P.2d 136 (1969).

*e.g.,* Wightman v. *Evanston Yaryan Co.,* 217 Ill. 371, 75 N.E. 502 (1905) ; *Clinton* v. *South Shore Natural Gas & Fuel Co.,* 113 N.Y.S. 289 (Sup. Ct. 1908) ; *Herring* v. *New York, L.E. & W.R. Co.,* 105 N.Y. 340, 12 N.E. 763 (1887) ; *Bruce* v. *Sugg,* 109 N.C. 202, 13 S.E. 790 (1891) ; *Tompson* v. *Huron Lumber Co.,* 4 Wash. 600, 30 P. 741 (1892) .

Those cases are based on the premise that a general creditor does not have an "immediate and present interest" in a foreclosure suit. *Clinton* v. *South Shore Natural Gas & Fuel Co.,* 113 N.Y.S. 289, 292 (Sup. Ct. 1908) . The fallacy of that premise is made obvious by the facts of this case. Akamine & Sons, Ltd., is liable to American Security Bank for certain debts which are not covered by mortgages. Akamine & Sons is bankrupt and has no interest in this litigation. Only Akamine & Sons' creditors care whether Hawaii National Bank receives more than is due it on its mortgages. Whatever Hawaii National Bank receives will decrease the amount available to the general creditors. Their interest in the case is real and immediate. The fear that multitudes of general creditors would attempt to intervene is not compelling. Where that fear becomes a reality, a court would be justified under our rules to exercise its discretion to make the action manageable. This result is fairer than simply allowing the secured creditor to receive in default whatever he requests. While Akamine & Sons' trustee in bankruptcy could have contested the amount due Hawaii National Bank, and while American Security Bank might have requested that it be appointed trustee to represent Akamine & Sons, American Security Bank has a real and substantial interest of its own which justifies its participation in the litigation. Thus, the trial court's decision allowing American Security Bank to contest the amount owed Hawaii National Bank is affirmed.[2]

---

[2]It should be noted that the original action was instituted by Akamine &

## II. Amount Due Hawaii National Bank.

### A. Principal Sums.

The trial court held that the sum of $24,296.27 was due Hawaii National Bank. In so holding, the court found that the original debt had been reduced by various payments.

1. The court found that a payment of $20,022.37 was made on April 24, 1969. However, there is no evidence to indicate that payment was made. While a ledger was produced which included a figure of $20,022.37 in a "payment column," a notation to that figure indicated that it stated only the amount of accrued interest due. No receipt for a payment on the date in question was produced, and the court's finding conflicted with other records produced.[3]

2. As to the sum of $17,500 the trial court stated that "[o]n November 13, 1962, Associated Drugs paid Fixtures Hawaii $17,500 in cash and gave a promissory note for $39,000. On November 13, 1962, Hawaii [National Bank] took an assignment of the accounts receivable of Fixtures Hawaii . . . . The fact that Exhibit ZZ did not state that Hawaii received the $17,500 is likewise not conclusive. That exhibit indicates that payments of $17,500 and $15,000 were made 'by Associated Drugs to Fixtures Hawaii, Inc.' " Then it stated that though Exhibit ZZ did not indicate that Hawaii National Bank had received payment of $15,000, the bank admitted in a memorandum dated November 11, 1970 that it had received payment of the sum of $15,000 and thus the trial court concluded and found that the sum of $17,500 was

---

Sons against American Security Bank, and Hawaii National Bank intervened. It would appear paradoxical to permit the intervenor (Hawaii National Bank) now to insist that American Security Bank, one of the original parties to the action, has no standing.

[3]If the holding of the trial court is correct, the balance due should be further reduced by $29,694.46 and $19,124.45, which amounts are also listed in the "payment column," though noted as "accrued interest," in the same exhibits.

likewise paid on November 13, 1962. Hawaii National Bank was not required to show non-payment of that sum. The burden of proof is with the party claiming payment, and that burden was upon American Security Bank which was asserting that payment of $17,500 had been made to Hawaii National Bank. *Bannister* v. *Lucas,* 21 Haw. 222, 223 (1912). However, it failed to introduce evidence to show such payment. Thus, we find that the trial court erred in reducing the balance owed Hawaii National Bank by the sum of $17,500.

3. The trial court also found that a payment of $24,500 was made on February 3, 1963. The court's finding was based on a complicated series of transactions, involving several corporations, all of which were apparently owned by the Akamine family. Akamine & Sons apparently had guaranteed loans made by the Hawaii National Bank to Matthews & Associates (also known as Fixtures Hawaii). Matthews was unable to pay the sum of $24,500 owed to the Bank. However, Associated Drugs owed Matthews a sum of money, but apparently it did not have sufficient cash to pay the debt to Matthews. Therefore, Hawaii National Bank agreed to loan $24,500 to Associated. Hawaii National Bank wrote a check for the amount; Associated immediately endorsed the check to Matthews, and Matthews endorsed the check back to Hawaii National Bank. Hawaii National Bank then stamped Matthews' note "paid." The net result of the transaction was that Hawaii National Bank received Associated's promise to pay $24,500 for Matthews' promise to pay the same amount.

The general rule is that when a creditor accepts a third party's note from a debtor, the note is not a final payment extinguishing the debt. The debtor is only released when the third party pays the note. If the parties wish to specifically agree that the acceptance of the third party's note is a final payment, they may do so, but in

the absence of a specific agreement, the acceptance of the note becomes a final payment only when the note is subsequently paid. *D. Foster & Co.* v. *Spencer,* 3 Haw. 594 (1875) ; *Don Kral Inc.* v. *Lindstrom,* 286 Minn. 37, 40-41, 173 N.W.2d 921, 924 (1970) ; *Lindberg* v. *Ferguson Trucking Co.,* 74 N.M. 246, 392 P.2d 586 (1964) ; *F.D. Cline Paving Co.* v. *Southland Speedways, Inc.,* 250 N.C. 358, 108 S.E.2d 641 (1959). As the court said in *Grady* v. *Pink Hill Bank & Trust Co.,* 184 N.C. 158, 162, 113 S.E. 667, 668 (1922) :

> ". . . the note of a third person given for a prior debt will be held a satisfaction, where it was agreed by the creditor to receive it absolutely as payment, and to run the risk of its being paid. The onus of establishing that it was so received is on the debtor. But there must be a clear and special agreement that the creditor shall take the paper absolutely as payment, or it will be no payment if it afterwards turns out to be of no value."

The rule is based on the probable intention of the parties. A debtor owes money to a bank. Although he does not have the cash, he does have a third person's note. The bank is under no obligation to accept the note in lieu of cash. If the bank does accept the note, the law presumes, in absence of a specific agreement to the contrary, that the bank accepted the note only on the condition that the note would be paid. *Don Kral Inc.* v. *Lindstrom,* 286 Minn. 37, 41, 173 N.W.2d 921, 924 (1970).

In the present case, there was no evidence that Hawaii National Bank accepted Associated's promise to pay $24,500 as final payment of Matthews' note for the same amount. It was therefore improper for the court to hold that the bank's acceptance of the note was a final payment. The fact that the bank stamped the note "paid" does not warrant a different conclusion. Evidence that a note is stamped "paid" is not in itself sufficient to estab-

lish an agreement that a third party's note is accepted as final payment. *Holden* v. *Farwell, Ozmun, Kirk & Co.,* 223 Minn. 550, 27 N.W.2d 641 (1947); *Cheltenham Stone & Gravel Co.* v. *Gates Iron Works,* 124 Ill. 623, 16 N.E. 923 (1888); *Interstate National Bank* v. *Ringo,* 72 Kan. 116, 83 P. 119 (1905); *Henry* v. *Conley,* 48 Ark. 267, 3 S.W. 181 (1887).

The trial court's findings that the sum of $20,022.37, $17,500 and $24,500 had been paid were clearly erroneous. However, we have not been convinced that the trial court's findings that other payments were made were clearly erroneous.

### B. Interest From November 27, 1964.

Hawaii National Bank contends that it is entitled to interest from Akamine & Sons on their debts after November 27, 1964, in spite of its having entered into a stipulation with American Security Bank on that day, whereby the latter bank was allowed to use $449,000, proceeds of the mortgage foreclosure sale, without interest. In support of this contention, Hawaii National Bank argues that by the stipulation it merely agreed to permit American Security Bank to use the proceeds without interest, but it did not waive its right to interest as against Akamine & Sons. We agree with this argument; however, it does not mean that because Hawaii National Bank by the stipulation had not waived interest as against Akamine & Sons it is entitled to have Akamine & Sons pay the bank interest.

It appears that Hawaii National Bank conveniently forgets that on November 27, 1964, when American Security Bank received $449,000 as proceeds of the foreclosure sale, there were sufficient funds to pay off the debts owed American Security Bank and secured by the first mortgage and debts owed Hawaii National Bank and secured by the second mortgage. While the fore-

closure sale was held on November 6, 1964, the first indication that American Security Bank was in possession of the proceeds of the sale appeared in the stipulation of November 27, 1964. Thus, it must be deemed that such debts were paid by Akamine & Sons as of November 27, 1964. The controversy between the two banks as to priority of their claims forestalled the payments of these debts owed by Akamine & Sons. It would be unfair and unjust to say that Akamine & Sons should be required to pay interest on their debts which should have been and could have been paid on November 27, 1964 except for this controversy. The funds could have been deposited in a financial institution and earned interest. In fact, the trial court on November 16, 1964 so ordered and the proceeds would have been so maintained, except for the stipulation entered into by the two banks. Hawaii National Bank could have earned interest on its share of the proceeds, but it elected not to do so by entering into the stipulation. Hawaii National Bank is now claiming interest from Akamine & Sons, to which it is not entitled, in an attempt to recoup interest which it could have claimed against American Security Bank except for the stipulation.

The question as to whether Hawaii National Bank may recover interest from American Security Bank or whether by the stipulation[4] Hawaii National Bank has waived its right to interest as against American Security Bank for the use of the portion of the funds to which it was entitled is not before us.

Therefore, we find that Hawaii National Bank is entitled to $91,946.28, which includes a recomputation of interest up to the date of the stipulation.

## III. Attorneys' Fees.

We are not convinced by arguments presented by

[4]We believe that the attorney for Hawaii National Bank may be placing himself in an awkward position by attempting to renege on the written stipulation.

either party on the issue of attorneys' fees. As we have said, though the general rule is that "this court only should reverse a judgment on a legal theory that appellant presented to the trial court . . . 'the rule is not inflexible' and appellate courts will deviate when justice requires." *In re Taxes, Hawaiian Land Co.,* 53 Haw. 45, 52, 487 P.2d 1070, 1075-76 (1971). (Footnote and citation omitted.) We also stated that where the issue in question does not go to the integrity of the fact finding process, we should be less hesitant to reverse a trial court judgment based on theory of law or arguments which may not have been argued before the trial court. *In re Taxes, Hawaiian Land Co., supra; Kennedy* v. *Silas Mason Co.,* 334 U.S. 249 (1848) ; *Bank of Hawaii* v. *Char,* 43 Haw. 223 (1959) ; *Duarte* v. *Bank of Hawaii,* 287 F.2d 51 (9th Cir. 1961). Likewise, we see little reason to ignore a significant argument that has not been voiced by the parties.

Thus, we take cognizance of pertinent provisions of the promissory notes and mortgage to American Security Bank which may not have been pointed out by the parties in their briefs and arguments.

## A. Attorney's Fees to American Security Bank.

The promissory notes executed by Akamine & Sons to American Security Bank representing the amounts due and secured by Akamine & Sons' mortgage contains the following covenant:

". . . . In the event of any default in the payment of this note, and if the same is placed in the hands of an attorney or collection agency for collection or suit is brought hereon, the undersigned jointly and severally, agree to pay in either case, *all costs of collection,* including attorney's fee equal to twenty per centum (20%) of the balance of principal and interest due and unpaid."

The mortgage to American Security Bank on page 7, paragraph 4, provides:

".  .  . and out of the proceeds of any foreclosure sale the Mortgagee may deduct all costs and expenses of sale, receivership, foreclosure and suit, or any of them, including reasonable compensation for the services of its employees or officers in connection therewith and an attorney's fee equal to twenty percent (20%) of the principal and interest due . . . ."

Under the foregoing provisions, without question attorneys' fees incurred in the collection and foreclosure proceedings are chargeable against Akamine & Sons and are likewise secured. In the proceeding before him Judge Dyer had allowed $17,500.00 attorney's fees based on a recovery of $434,527.07, which amount we reduced to $309,139.08,[5] including interest to November 27, 1964.

It is to be noted that HRS § 607-17 provides for the awarding of 25% (of the judgment for principal and interest) to a successful party where a provision of a note or agreement calls for 25% or more or the lesser percentage called for in such instrument as maximum attorney's fee. Thus American Security Bank could have been awarded 20% of $309,139.08 or $61,827.82 as maximum attorney's fees. Also, Hawaii National Bank has acquiesed to the reasonableness of the fee as allowed. Therefore, we are allowing American Security Bank $17,500.00 as its attorney's fee for the proceeding in Judge Dyer's court.

It is correct that a substantial portion, if not all, of the services of the attorneys in subsequent proceedings (including appeals to this court) were rendered on questions involving priority of claims, claims of Hawaii National Bank, etc. Hawaii National Bank questions the fees allowed American Security Bank in these proceedings contending that the trial court erred in awarding such

---

[5]Akamine & Sons, Ltd. v. American Security Bank, 50 Haw. 304, 440 P.2d 262 (1968).

fees because American Security Bank was not the prevailing party as against Hawaii National Bank.

Probably the trial court allowed attorney's fees to American Security Bank on the basis that it was the prevailing party. Thus, the ground for the allowance may have been error. However, it does not mean that the allowance of the attorney's fees was error. As we indicated in the first paragraph of part III of this decision, in reaching a decision here we are not bound by the arguments presented by the parties nor the theory of law or reasoning adopted by the trial court in reaching the decision.

It is to be noted that paragraph 14, page 9 of the mortgage provides:

"That the mortgagor will not encumber, convey, sell, lease or assign the whole or any part of the mortgaged property without the prior written consent of the Mortgagee."

Also, paragraph 6, page 8 of the mortgage reads:

"That the mortgagor will pay and discharge all costs and attorney's fees and expenses that shall arise from enforcing the covenants and conditions of this mortgage."

Further, pertinent portion of paragraph 1, page 8 of the mortgage states:

". . . that in default . . . or upon failure to observe or perform any covenant or condition of this mortgage . . .' and that it may recover any such advances made and all expenses, including attorney's fee, paid or incurred by it . . . , and the same shall be secured hereby."

There is no question that Akamine & Sons, when it executed a second mortgage on the same property to secure its debts to Hawaii National Bank without the consent of American Security Bank, breached the cove-

118

nant not to encumber the mortgaged property. That breach was responsible for and the cause of the subsequent proceedings between American Security Bank and Hawaii National Bank. Thus, it must be deemed that the breach caused American Security Bank to incur expenses for attorneys in these proceedings; and as to the attorney's fees so incurred, American Security Bank is entitled to be paid by Akamine & Sons and the payment of the same is secured by the mortgage.

By the foregoing conclusion, however, we are not affirming the trial court's allowance of attorney's fees, nor are we ruling as to the reasonableness of the sum of $55,201.44 so allowed. As we have said, "if the amount of the fee allowed or awarded appears to the appellate court to be disproportionate to the extent of legal services normally required to be expended in a case of the nature of the one before the trial judge in which the fee was allowed or awarded, his allowance or award of a 'reasonable' attorney's fee must then stand the scrutiny of the reviewing court on the record." *Sharp* v. *Hui Wahine, Inc.,* 49 Haw. 241, 251, 413 P.2d 242, 248 (1966). This matter is now before us for the third time, and we believe that further remand on the issue of reasonableness of attorney's fees may be as fruitless. Thus under the circumstances of this case we believe we are compelled to determine this issue. We now allow American Security Bank the sum of $20,000 as reasonable attorney's fees incurred in its subsequent proceedings[6] in addition to $17,500.00 allowed by Judge Dyer.

On the basis of the mortgage covenants cited above, the $6,431.08 allowed as costs by the circuit court and $25.00 allowed as additional costs in the initial proceeding but erroneously included in the award of attorney's fees will be allowed to American Security Bank.

[6]Appellate courts, like trial courts, are experts on the issue of the reasonableness of attorneys' fees. *B-M-G Investment Co.* v. *Continental/Moss Mordin, Inc.,* 437 F.2d 892 (5th Cir. 1971).

## B. Attorney's Fees to Hawaii National Bank.

The trial court erroneously denied attorney's fees to Hawaii National Bank on the reasoning that HRS § 607-17 precluded such an award. While that provision provides for awards only to a "successful party," as between Hawaii National Bank and Akamine & Sons, Hawaii National Bank has successfully recovered on its notes. Also in the promissory notes and mortgage, upon which Hawaii National Bank's claim is based, Akamine & Sons agrees to pay attorney's fees, and the mortgage secures its payment.[7]

The maximum amount of attorney's fees that can be awarded to Hawaii National Bank under HRS § 607-17 is 25% of the amount owed them. However, the record shows that Akamine & Sons offered no resistance in the proceedings instituted by Hawaii National Bank to collect on its debt secured by a second mortgage. The parcels of real property securing this debt having been foreclosed and sold by American Security Bank, owner of the first mortgage on the same property, Hawaii National Bank's claim secured by the second mortgage is to be satisfied in full by a portion of the foreclosure proceeds. Thus, no foreclosure proceeding has to be instituted by Hawaii National Bank. Therefore, under the record of this case we consider that Hawaii National Bank had obtained its judgment of $91,946.28 against Akamine & Sons by default and we are allowing Hawaii National Bank the sum of $2,923.66 under the provisions of Rule 10 (d) , Rules of the Circuit Courts.[8]

Eight hundred seven dollars and twenty cents ($807.20) of costs is also awarded to Hawaii National

---

[7]Mortgage from Akamine & Sons, Ltd. to Hawaii National Bank dated August 30, 1962, Covenant, G. p. 8.

Second paragraph of the promissory notes executed to Hawaii National Bank by Akamine & Sons, Ltd.

[8]Formerly Rule 11 (c) , Rules of the Circuit Court of the First Circuit (1960) .

Bank as provided for in the mortgage between Hawaii National Bank and Akamine & Sons.

## IV. Summary.

We direct American Security Bank to dispose of the four hundred and forty-nine thousand dollars ($449,000.-00) produced from the foreclosure sale as follows:

(1) American Security Bank may retain the sum of three hundred nine thousand, one hundred and thirty-nine dollars and eight cents ($309,139.08), in payment of amount due on the two mortgage loans in issue which sum includes interest to November 27, 1964.

(2) American may retain the sum of thirty-seven thousand five hundred dollars ($37,500.00) in payment of attorney's fees [seventeen thousand five hundred dollars ($17,500) incurred in the collection of the loans in question and twenty thousand dollars ($20,000) allowed by this decision], and the further sum of six thousand four hundred fifty-six dollars and eight cents ($6,456.08) in costs.

(3) American is directed to pay to Hawaii National Bank the sum of ninety-five thousand, six hundred seventy-seven dollars and fourteen cents ($95,677.14)[9] without interest.

(4) Of the four hundred forty-nine thousand dollars ($449,000) resulting from the mortgage foreclosure sale, two hundred twenty-seven dollars and seventy cents ($227.70) remains.[10] American Security Bank is directed

---

[9]Principal and interest awarded . . . . . . . . . . . $91,946.28
Attorney's fees . . . . . . . . . . . . . . . . . . . 2,923.66
Costs . . . . . . . . . . . . . . . . . . . . . . . 807.20

$95,677.14

[10]Foreclosure Proceeds . . . . . . . . . . . . . . $449,000.00
American Security Bank
Principal and interest . . . $309,139.08
Attorney's fees . . . . . . . 37,500.00
Costs . . . . . . . . . . 6,456.08 ($353,095.16)

to pay that amount to the Director of Regulatory Agencies, who under HRS § 416-12 will secure its distribution to appropriate persons.

Any technical errors in the court's judgment may be presented in written motions for reconsideration. No remand is necessary. No costs shall be awarded for this appeal, since some issues were decided for each party.

Affirmed in part; reversed in part.

*Arthur B. Reinwald* (*Anthony, Hoddick, Reinwald & O'Connor* of counsel) for petitioner-intervenor appellant.

*Walter G. Chuck and Rodney M. Fujiyama* (*Chuck & Fujiyama* of counsel) for respondent-appellee.

---

CONCURRING AND DISSENTING OPINION OF
CIRCUIT JUDGE M. DOI

I dissent in part.

I do not agree with a portion of part III-A of the majority opinion concerning attorney's fees for American Security Bank.

The allowance of $17,500 for the proceedings before Judge Dyer is justified. However, the allowance of fees ($20,000) for legal activity on the part of American Security Bank subsequent to those proceedings is not.

After completion of the proceedings before Judge Dyer, the Akamines did absolutely nothing further to prevent American Security Bank from satisfying its mortgage. (But even if they had, the result of the subsequent litigation was such that they should not be held liable for American Security Bank's counsel fees since

---

|  |  |  |
|---|---|---|
| Hawaii National Bank | | |
| Principal and interest . . . | $ 91,946.28 | |
| Attorney's fees . . . . . | 2,923.66 | |
| Costs . . . . . . . . . | 807.20 | ( 95,677.14) |
| Net . . . . : . . . . . . . . . . . . . . . . . . . | | $    227.70 |

they would have won.) All of the subsequent litigation was the result of the controversy between American Security Bank and Hawaii National Bank as to priorities, in which the sole question was the validity of American Security Bank's assertion of certain liens on the Akamine's mortgage proceeds. American Security Bank lost in that subsequent litigation and its claim was disallowed.

The question is whether the Akamines should pay for American Security Bank's legal fees for those subsequent proceedings, and the answer lies in where the fault is to be placed for those proceedings. The principle of fault as the basis for a determination is adopted by the majority in its treatment of the interest issue and, more to the point, is also found in the accepted principle that counsel fees are awarded only to a prevailing party.

I agree with the majority that "without question attorneys' fees incurred in the collection and foreclosure proceedings are chargeable against Akamine & Sons and are likewise secured." But this proposition is limited to enforcement of American Security Bank's secured claims and, although applicable to the proceedings before Judge Dyer, it is not applicable to the subsequent proceedings for the simple reason that those subsequent proceedings involved only the assertion of claims which were *not* secured by the mortgage. Furthermore, it should be noted that even though invalid, the assertion of those claims in the subsequent proceedings was not resisted at all by the Akamines.

However, the majority unfairly saddles the Akamines with American Security Bank's further legal fees on the reasoning that they were "responsible for and the cause of the subsequent proceedings", that is, they were at fault. The sole basis for placing fault on the Akamines is that they gave a second mortgage in breach of their covenant not to do so without the consent of American Security Bank. What is being said is that had not the second mortgage been given, Hawaii National Bank

would not have been around to contest American Security Bank's invalid claim on the proceeds belonging to the Akamines.

It is true that without the second mortgage, Hawaii National Bank would not have been in the case. However, this is strictly a "but-for" casual proposition which does not answer the question of fault at all. It is elementary that more than a "but-for" connection is necessary in order to establish substantial cause and consequent fault.

In this case, Hawaii National Bank did nothing to prevent or hinder American Security Bank from enforcing its legitimate mortgage claims. American Security Bank can point to no damage suffered by it because of the second mortgagee's appearance in the case, unless, of course, one is to take the absurd position that it was prejudiced because it was prevented from impressing invalid liens on the Akamines' mortgage proceeds. Thus, the giving of the second mortgage, which is the sole basis for the majority's conclusion, is hardly a justifiable ground on which to assess fault and counsel fees against the Akamines

On the other hand, it is obvious that but for American Security Bank's attempt to collect its unsecured claims from the mortgage proceeds, the subsequent litigation would not have ensued. *And American Security Bank lost in that attempt.* It is on this fact, the fact that it lost, that fault should be placed on the bank rather than on the Akamines. This is the usual reason given for assessing costs as well as counsel fees, and there is no reason for deviating from it.

Why should American Security Bank be entitled to charge the Akamines with counsel fees incurred by it in its assertion of claims against them which it had no right to assert in the mortgage proceedings? To ask the question is to answer it.

Of course, had the bank prevailed in its claim for additional liens on the mortgage proceeds, there is no doubt that the Akamines should be held responsible for the additional counsel fees. Had the bank won, it could rightfully claim that the Akamines should be held responsible even though they did nothing after the proceedings in Judge Dyer's court, because the proposition would then be that the bank incurred the further legal fees in enforcing their valid mortgage rights and were hindered by Hawaii National Bank which came into the case through the Akamines' breach. But those are not the facts.

It is highly unusual to see a losing party be awarded counsel fees, but more so under the circumstances of this case where the one unfairly compelled to pay is the party who was declared the winner *in absentia* without even resisting the losing party's unwarranted claims.